UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROXANN J. FRANKLIN-MASON,<br><br>  Plaintiff,<br><br>  v.<br><br>HANSFORD T. JOHNSON,<br>**Acting Secretary of the Navy,**<br><br>  Defendant. | Civil Action No. 03-945 (RWR/JMF) |

REPORT AND RECOMMENDATION

The case is before me for a Report and Recommendation on defendant's Motion for Partial Summary Judgment.[1]  For the reasons stated below, I recommend that plaintiff's motion be denied.

I.   BACKGROUND

On October 31, 1996, plaintiff, an African American female, brought a Title VII action against her former employer, the United States Navy, in the United States District Court for the District of Columbia.  In Civil Action No. 96-2505, plaintiff claimed that defendant discriminated against her on the basis of her race and gender by not giving her a position for which she believed she was qualified and for which she applied.  Although that case settled on April 7, 1999, I recently issued my Report and Recommendation on plaintiff's motion to enforce

---

[1] Defendant does not move for summary judgment on plaintiff's claim that she was not given assignments commensurate with her position as a Senior Financial Analyst/Advisor. Memorandum in Support of Defendant's Motion for Partial Summary Judgment ("Defs. Mem.") at 3.

the terms of the agreement and for sanctions.

In the current case, Civil Action No. 03-945, plaintiff alleges that she was retaliated against because she brought a Title VII action, both at the administrative level and in this Court.[2] Specifically, plaintiff claims that she suffered the following seven acts of retaliation for attempting to enforce the terms of the settlement agreement: 1) she was denied the restoration of certain leave, 2) she was moved to a smaller cubicle, 3) she was subjected to harassment about the amount of leave she was taking, 4) she was denied training, 5) she was not given performance appraisals, and 6) she was threatened with disciplinary action.[3]

## II.     PLAINTIFF'S CLAIMS

**The "Use or Lose" Leave Claim.**  A leave year runs from the first day of the first full biweekly pay period in a calendar year until the day just before that same day of the next calendar year. Defs. Mem., Ex. C at 1.  Employees of the Military Sealift Command ("MSC") may carry over a set amount of accrued annual leave to the next leave year. Id.  Any leave over and above that set amount must be used by the end of the leave year, or it will be lost. Id. at 2.  Under certain circumstances, leave that was forfeited may be restored if it was scheduled in writing prior to the beginning of the third biweekly pay period prior to the end of the leave year. Id.  Such a decision is discretionary on the agency's part. Id.

---

[2] Plaintiff originally also stated a claim for breach of the settlement agreement but that claim was voluntarily dismissed without prejudice by Judge Roberts on October 22, 2004.

[3] In her opposition to defendant's partial summary judgment motion, plaintiff withdrew an additional claim of retaliation based on the fact that her workmen's compensation claim was not processed in a timely fashion. Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment ("Plains. Opp.") at 11 n.9.

In January of 2002, plaintiff noticed that her leave and earnings statement indicated that she had nineteen hours of "use or lose" leave from the previous leave year. Complaint ("Compl.") ¶ 13; Defs. Mem. at 2. On February 8, 2002, plaintiff submitted a request for leave restoration. Plains. Opp., Ex. 12. On February 25, 2002, Captain Penix[4] denied plaintiff's request because it was not submitted by January 31, 2002, the applicable deadline. Plains. Opp., Ex. 10-11.

**The Office Cubicle Claim.** In October of 2001, the Naval Fleet Auxiliary Force Office ("NFAF") was reorganized. Compl. ¶ 14; Defs. Mem. at 3. As a result of the reorganization, plaintiff's office was moved from one cubicle to another. Defs. Mem., Ex. E at 106. See also Plains. Opp., Ex. 3-4.

**The Leave Inquiries Claim.** On November 14, 2001, plaintiff sent Barron Nelson[5] and Captain Penix an e-mail about her work schedule for the upcoming week. Plains. Opp., Ex. 6. Penix responded by e-mail to plaintiff's message on November 26, 2001, asking that she resubmit her schedule as he had not received it. Id.

In 2002, plaintiff was on an alternative work schedule. Defs. Mem., Ex. G at 1. As a result, she was off every other Monday, but worked one extra hour per day from Tuesday through Friday. Id. In January of 2002, plaintiff exchanged multiple e-mails with Penix regarding the fact that she would be taking certain time off. Id. at Ex. 8-9. That month, plaintiff took 37 hours of annual leave and 16 hours of sick leave. Id. at 3.

In February of 2002, plaintiff took 39 hours of annual leave and 5 hours of sick leave. Id.

---

[4] Plaintiff's immediate supervisor.

[5] Program Manager for PM1.

In March of 2002, plaintiff took 8 hours of annual leave and 135 hours of sick leave. Id. at 4.

On September 5, 2002, Penix wrote plaintiff's attorney a letter explaining why plaintiff's request for advanced paid leave was being denied and expressing his concern about the amount of leave plaintiff had already taken and was seeking in the future. Id. at Ex. 19.

Plaintiff was out of the office completely from April of 2002 through October of 2002. Id. at 4-7.

In November of 2002, plaintiff took 17 hours of annual leave, 11 hours of sick leave, 9 hours of approved leave without pay, and 9 hours of court leave. Id. at 8.

In December of 2002, several e-mails were exchanged between Captain Herb[6] and plaintiff regarding MSC's implementation of an attendance sign in/out sheet. Id. at Ex. 20. In the e-mails, Herb indicates that plaintiff has thus far failed to comply with the new policy and that, unless she does, he will report it to Personnel. Id. In December of 2002, plaintiff took 11 hours of annual leave and 24 hours of advanced sick leave. Id.

**The Training Claim.** In April of 1999, when plaintiff began working at NFAF as a Senior Financial Analyst/Advisor, Lucy Austin,[7] volunteered to serve as plaintiff's mentor and provided her with "face-to-face oral briefings, an overview of the NFAF Program, copies of financial briefs, financial reports and the NFAF Business Plan." Defs. Mem., Ex. H at 1-2. Plaintiff also received additional financial management and budget training in the form of briefings, site visits, seminars, and course work. Id. at 2. Plaintiff's request to attend a stress

---

[6] Captain Herb succeeded Captain Penix as plaintiff's immediate supervisor.

[7] Business Manager for NFAF.

management seminar was denied. Id., Ex. F at 25.

On March 23, 2001, plaintiff submitted a request to attend a training program at the UMUC National Leadership Institute at a cost of $1,210. According to plaintiff, the objective of the program was "to obtain an overviw [sic] of all facets of comptrollerships." Plains. Opp., Ex. 21. On March 29, 2001, Penix notified plaintiff by e-mail that her request was being denied because a leadership course was not relevant to her current position. Id., Ex. 22.

On April 24, 2001, Penix wrote plaintiff a handwritten note in which he approved plaintiff's request for training. Id., Ex. 23 at 2. This time, plaintiff requested training "to enhance time saving tools and stress reducing techniques." Id., Ex. 23 at 1.

**The Performance Appraisal Claim.** On September 21, 2000, Nelson signed plaintiff's performance appraisal for the period from April 1, 1999 to April 30, 2000. Defs. Mem., Ex. I at 3. Plaintiff received a rating of "Acceptable." Id. Employees may receive either an "Acceptable" rating or an "Unacceptable" rating. Defs. Mem., Ex. I at 3. An "Acceptable" rating does not mean that an employee automatically receives a bonus or other performance award. Id. at 1.

Plaintiff did not receive an evaluation for 2001. Defs. Mem. at 20.

On June 5, 2003, plaintiff received another performance appraisal. Defs. Mem., Ex. J at 1. This appraisal covered the period from November 5, 2002 to April 30, 2003. Id. Plaintiff was presented with this appraisal both on December 11, 2002 and in June of 2003 but refused to sign it on either occasion. Id.

During plaintiff's employment at MSC, plaintiff was a Level 13, Step10, the top step within Grade 13. Defs. Mem., Ex. D at 1-2. Once employees reach the top step within their grade level, they are not eligible for any further within-grade pay increases, but they are eligible

for a cash award, if nominated and approved by a supervisor. Id. at 1.

**The Threatened Discipline Claim.** On October 15, 2003, Captain Herb notified plaintiff via e-mail that, if she continued to refuse to create two spreadsheets that he had requested, he would initiate official disciplinary action against her. Defs. Mem., Ex. M. Plaintiff then filed for a preliminary injunction in Civil Action No. 96-2505, after which Herb was advised not to take any further action against her. Id., Ex. K at 260-61.

### III.  DEFENDANT IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT

The defendant seeks only partial summary judgment, declining to move at this point for dismissal of plaintiff's claim "that she was not given the work assignments that were supposed to be given her under the stipulation of settlement of her prior Title VII case and that this was done in retaliation for her Title VII litigation activity." Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Reply") at 1. Instead, defendant seeks "partial summary judgment on seven discrete events that plaintiff contends constituted retaliation." Id. Thus, if defendant prevails, it will be granted summary judgment on the "seven discrete events." To that end, the defendant attacks each event as follows:

**The Use or Lose Leave Claim.** Plaintiff does not tender any evidence from which an inference of retaliation can be drawn, such as the fact that other employees made untimely requests but were granted the leave while plaintiff was not.

**The Office Cubicle Claim.** Plaintiff cannot establish that after the move any GS-13, like her, had an office.

**The Leave Inquiries Claim.** There is no evidence from which a retaliatory intent can be inferred. The denial of leave was based on a logical reason and requiring plaintiff to sign in and

out was based on a universal policy.

**The Training Claim.**  Since plaintiff was permitted to attend training and was denied training on only two occasions, there was no adverse personnel action and plaintiff could not point to any similarly situated person who was treated differently.

**The Performance Evaluation.**  Plaintiff received two of the three performance appraisals and she was not, in any event, eligible for merit-based step increases.  Additionally, the awards system at NFAF was not keyed to the ratings in the performance appraisal.

**The Workmen's Compensation Claim.**  The handling of such a claim is not an adverse action.  (Plaintiff has now abandoned reliance on this claim.)

**The Threatened Discipline Claim.**  The fact that plaintiff's supervisor informed her that she would be subjected to disciplinary action if she continued to refuse to do assigned work was not an adverse personnel action and she offers no evidence that anyone else who refused to do assigned work was not cautioned as plaintiff was.

In summary, the government's position is that it is entitled to summary judgment on these seven issues, barring any relief being awarded to plaintiff on the basis of these events.  This would leave for trial only plaintiff's claim "that she was not given the work assignments that were supposed to be given her under the stipulation of settlement of her prior Title VII case and that this was done in retaliation for her Title VII litigation activity." Reply at 1.

## IV.   RULE 56(a)

Rule 56(a) provides that a defendant may move for summary judgment "as to all or any part" of a claim for relief.[8]  The courts have universally held, since at least 1946, that the rule

---

[8] See Fed. R. Civ. P. 8(a).

cannot mean that the court has the power to grant summary judgment as to one aspect of an indivisible claim.[9]  In this sense, it is said that the term "partial summary judgment" is a

---

[9] See Commonwealth Ins. Co. of New York v. O. Henry Tent & Awning Co., 266 F.2d 200, 201 (7th Cir. 1959) ("'We observe in the beginning and will attempt to show that this rule, in our opinion, does not contemplate a summary judgment for a portion of a single claim in suit.'") (quoting Biggins v. Oltmer Iron Works, 154 F.2d 214, 217 (7th Cir. 1946) (("[I]nterpreting paragraph (d) as a whole, it appears plain that a summary judgment is not contemplated or authorized for any portion of a claim less than the whole.  When the court is confronted with such a motion as it was in the instant case, it is authorized only to make an 'order' as to the non-controverted facts . . . .")); Antenor v. D&S Farms, 39 F. Supp. 2d 1372, 1375 n.4 (S.D. Fla. 1999) ("The court notes that it may not enter summary judgment on a portion of a claim–such as the issue of liquidated damages . . . [a party may not move] for a finding of fact on an issue that does not dispose of an entire cause of action [unless determination will result in an appealable judgment.]"); In re Air Crash Disaster near Warsaw, Poland on May 9, 1987, 979 F. Supp. 164, 167 (E.D.N.Y. 1997) ("Rule 56(d) authorizes the court to make an order establishing the uncontroverted facts; it does not permit the court to enter judgment on part of a single claim."); Dalton v. Alston & Bird, 741 F. Supp. 1322, 1336 (S.D. Ill. 1990) (Rule 56(d) does not authorize an independent motion to establish certain facts as true:  "The provisions of Rule 56(d) are designed to salvage whatever constructive results have come from the judicial effort in deciding the motion. 6 Part 2 Moore *Moore's Federal Practice*, ¶ 56.20[3.3] at 56-1223 (2d ed. 1985).  Those provisions do not authorize independent motions that would dispose of disputed factual issues in litigation piecemeal.  Furthermore, allowing litigants to use Rule 56(d) to determine certain factual issues which do not dispose of an entire claim would require the court to pre-try all the factual issues in the case.  This would contravene the purpose of summary judgment, namely judicial efficiency."); Strandell v. Jackson County, Illinois, 648 F. Supp. 126, 136 (S.D. Ill. 1986) (request to enter summary judgment on all state law claims in excess of $500,000 denied; Rule 56 does not authorize the entry of judgment on part of a claim or the granting of partial relief.); Newman-Green, Inc. v. Alfonzo-Larrain R., 612 F. Supp. 1434, 1439-40 (N.D. Ill. 1985) ("The language [of Rule 56(a)] does not permit the piecemealing of a single claim-in this case, the claim under the Guaranty Agreement-simply by dividing it into different time periods."); Central States, Southeast and Southwest Areas Pension and Health & Welfare Funds v. McNamara Motor Express, Inc., 503 F. Supp. 96, 100 (W.D. Mich. 1980) ("The order to be entered by the court is in the nature of a pre-trial adjudication, not a final judgment, not subject to appeal, and not enforceable by execution or otherwise at this stage of the proceedings."); Testa v. Janssen, 492 F. Supp. 198, 204 (W.D. Pa. 1980) ("The Federal Rules of Civil Procedure do not authorize partial summary judgment for a portion of a single claim."); Shultz v. United Steelworkers of America AFL-CIO-CLC (District 19), 319 F. Supp. 1172, 1173 (W.D. Pa. 1970) ("It has been held by the Court of Appeals for this Circuit that a pretrial summary judgment may not be entered where there is but a single claim as here. Re Pass v. Vreeland, 357 F.2d 801 (C.A. 3rd 1966)."); Hagberg v. City of Sioux Falls, 281 F. Supp. 460, 468 (D.S.D. 1968) (". . . Rule 56 does not contemplate 'a partial summary judgment,' as such.");

misnomer. Deimer v. Cincinnati Sub-Zero Products, Inc., 990 F.2d 342, 346 (7th Cir. 1993) (quoting Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind., 721 F.2d 197, 200 (7th Cir. 1983) ("The word 'judgment' in the term 'partial summary judgment' is a misnomer.  A partial summary judgment is merely an order deciding one or more issues in advance of trial.")); Driver v. F.A. Mitchell Co., 35 F.R.D. at 226 (Subsection (d) of Rule 56 authorizes an order limiting issues to be tried by analogy to Rule 16; Professor Moore recommends that this be called an interlocutory summary adjudication).

The Rule, after all, permits the award of judgment and judgment cannot be awarded if, as may be true, some aspect of an indivisible claim for relief remains in existence, untouched by the defendant's motion.  The words in Rule 56(a) that authorize "summary judgment in the party's favor upon all or any part thereof" are intended to permit the court to invoke the power granted by subsection (d) to order that certain facts are true, including the extent to which "damages or other relief is not in controversy."  The Advisory Committee explains that the order that emerges from exercising the power under subsection (d) is not the entry of a judgment as that term is defined in Rule 54(a), but is instead a pre-trial order:

Rule 54(a) defines "judgment" as including a decree and "any

---

Driver v. F.A. Mitchell Co., 35 F.R.D. 226 (E.D. Pa. 1964) ("The Federal Rules of Civil Procedure do not provide for a 'partial summary judgment' under Rule 56.  Since the elimination of the warranty count will not completely dispose of the case, the appropriate remedy is provided by subsection (d) of Rule 56, which authorizes an order limiting the issues to be tried, by analogy to Rule 16 relating to pretrial orders.  Professor Moore recommends that this should be called an 'interlocutory summary adjudication'.  6 Moore, Federal Practice (1953), § 56.20 [3].  Such an adjudication is not a final judgment . . . . "); Saylor v. Fayette R. Plumb, Inc., 30 F.R.D. 176, 180 (E.D. Pa. 1962) ("F.R.Civ.P. 56, 28 U.S.C.A. does not contemplate partial summary judgment as to a portion of a single claim."); Daniels v. Beryllium Corp., 211 F. Supp. 452, 456 (E.D. Pa. 1962) ("We may not, however, enter a so-called 'partial' summary judgment.  Rule 56 does not contemplate summary judgment as to a portion of a single claim.").

> order from which an appeal lies." Subdivision (d) of Rule 56 indicates, clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. The adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issues of fact.

Fed. R. Civ. P. 56 advisory committee's note.

**V.   PLAINTIFF IS ASSERTING A SINGLE INDIVISIBLE CLAIM**

In this case, it is clear that Count 1 of the plaintiff's complaint is indivisible. It asserts that from the execution of the settlement agreement to the date of the filing of the complaint, "Defendant . . . subjected her to adverse and disparate treatment in retaliation for her opposition to Defendant's unlawful employment practices . . . " Compl. ¶ 26. That paragraph incorporates by reference the first 25 paragraphs of the complaint, beginning with the execution of the agreement on April 7, 1999 (¶ 8) and then recounts what occurred from that point on, including the seven events the defendant identifies. Thus, plaintiff is asserting an indivisible claim by arguing that an entire course of action violated her rights. The defendant does not move for summary judgment as to the claim of breach of the settlement agreement based on plaintiff's not being given the position to which she was entitled, but argues first that the seven events are insufficient in themselves and then that, even when considered in total, do not constitute a hostile environment. But, even if the seven events are not actionable, adverse employment actions or do not, in themselves, constitute a hostile work environment, plaintiff has the right to prove all that happened to her from her return to her departure in support of her claim that the defendant

retaliated against her for engaging in protected activity.  That any one of the seven events was not in itself an actionable employment action or, considered cumulatively, do not constitute a hostile work environment does not entitle defendant to judgment as to count one.  Plaintiff is still able to show that the failure to give her the position she bargained for was retaliatory and then offer the seven events as further proof of defendant's intent.  Thus, the defendant is impermissibly seeking "partial summary judgment" as to a single indivisible claim for relief and is clearly not entitled to any kind of "judgment", as that term is defined by Rule 54(a), i.e., "a decree and any order from which an appeal lies."

### VI.    RESORT TO RULE 56(d) IS UNNECESSARY

Finally, I see nothing to be gained by determining, in accordance with subsection (d) of Rule 56, that certain facts are not in dispute.  The gravamen of plaintiff's complaint is that everything that was done to her was animated by a retaliatory intent.  She will have to describe what occurred to convey to the finder of fact evidence from which it may infer that intent, whether or not the court now finds that certain facts are not in dispute.  I therefore cannot recommend that the court do anything more than deny the defendant's motion.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

Dated:

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE